IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

WAYNE BAPTISTE,

    Petitioner,

v.

WARDEN EDGE,

    Respondent.

CIVIL ACTION NO.: 2:18-cv-141

### ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Wayne Baptiste ("Baptiste"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Baptiste filed a Response. Docs. 8, 11. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Baptiste's Petition, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Baptiste *in forma pauperis* status on appeal.

### BACKGROUND

On June 6, 2000, Baptiste was convicted in the Southern District of Florida of conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. Doc. 8-1 at 7. Baptiste was sentenced to 360 months' imprisonment. Id. On October 25, 2017, Baptiste was also convicted in the Eastern District of Arkansas of possession of a prohibited object in prison, in violation of 18 U.S.C. § 1791(a)(2), and was sentenced to a year and a day in

prison.  Id. at 7–8.  He has a projected release date of August 16, 2026 via good conduct time release.  Id. at 7.

As a result of disciplinary hearing proceedings based on a Bureau of Prisons' ("BOP") Code 113 charge for possession of narcotics during his incarceration, Baptiste was sanctioned with the loss of 41 days' good-conduct time, 15 days' disciplinary segregation, and loss of visitation privileges for 180 days.  Doc. 1 at 2; Doc. 8-2 at 13–14.  Through his Petition, Baptiste challenges the BOP's disciplinary proceedings and resulting sanctions stemming from the Code 113 charge, doc. 1, which are separate from the above-described criminal prosecutions and sentences.

## DISCUSSION

In his Petition, Baptiste contends his due process rights were violated during the disciplinary proceedings relating to the Code 113 charge in three ways.  First, Baptiste asserts he did not receive a copy of the incident report within 24 hours of the charged incident.  Doc. 1 at 6–7.  Second, Baptiste avers his right to call witnesses for the disciplinary hearing was hindered because he was transferred from the institution where the violation occurred.  Baptiste asserts he was told at his new institution—mistakenly—that his witnesses needed to be at the same institution where he was located.  Id. at 7.  Third, he was required "by rule" to receive a copy of the disciplinary hearing officer's ("DHO") report within 15 days, yet he did not receive a copy of the DHO report until 4 months later.[1]  Id.  Baptiste maintains this "intentional lapse" between the issuance of the DHO report and his receipt adversely affected his ability to obtain witness statements and legal counsel for his appeal.  Id.  As relief, Baptists asks the Court to order the BOP to expunge his incident report and restore his lost good-conduct time.  Id. at 8.

---

[1] To avoid any confusion, in his first ground, Baptiste complains about the timing of the issuance of an *incident* report, but in his third ground, he complains about the delay in receiving his *DHO* report.

2

Respondent avers Baptiste failed to exhaust his administrative remedies regarding his contentions he was not allowed to call witnesses and that he did not receive the DHO report on time. Doc. 8 at 3. Additionally, Respondent contends all of Baptiste's due process requirements were met as a result of the disciplinary proceedings. Id. at 5. The Court addresses Respondent's arguments in turn.

I.   **Whether Baptiste Exhausted His Administrative Remedies**

   A.   **Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Fleming, 631 F. App'x at 842 (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. As a result, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). To be clear, exhaustion requirements are applicable to habeas petitions. Santiago-Lugo, 785 F.3d at 475 (noting exhaustion is required for § 2241 petitions but is not a jurisdictional requirement).

exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.    Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[3] First, the court is to take the petitioner's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the petitioner's version of the facts, the petitioner has not exhausted, the cause of action must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether petitioner has exhausted, the court need not accept all of petitioner's facts as true. Id. Rather, "the court then proceeds to make specific findings in

---

[3]    Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

5

order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

### C. The BOP's Exhaustion Requirements

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment.  28 C.F.R. § 542.10 *et seq*.  The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP.  § 542.10(b).  Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff.  § 542.13(a).  If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within 20 calendar days of the incident giving rise to the grievance.  § 542.14(a).  In those situations in which an inmate is appealing a disciplinary hearing proceeding, however, the inmate is to submit an appeal directly with the Regional Director for the region in which the inmate is located at the time of filing.  § 542.15(d)(2).  Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level.  This form is commonly referred to as a "BP-10" form.  Doc. 8-1 at 2.

If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response.  Id.; 28 C.F.R. § 542.15.  Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process.  § 542.15(a).

Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form. Doc. 8-1 at 3.

At either level, the coordinator may reject and return an appeal that does not meet any of the requirements. 28 C.F.R. § 542.17. The inmate must be provided with written notice of the reason for rejection. If the defect is correctable, the inmate must be given a reasonable extension of time to correct the deficiency. Id. "When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection . . . to the next appeal level. Id.

### D. Analysis of Baptiste's Efforts at Exhaustion

As noted, Baptiste asserts three grounds in his Petition: (1) Respondent failed to provide a copy of the incident report within 24 hours of the charged incident; (2) Respondent hindered Baptiste's ability to call witnesses because he was transferred from the institution where the violation occurred; and (3) Respondent failed to provide a copy of the DHO's report within 15 days. Doc. 1 at 6–7. Respondent asserts that Baptiste failed to exhaust his administrative remedies as to the second and third grounds.[4] Baptiste acknowledges he did not file administrative remedy requests regarding his second and third grounds but contends he failed to do so because of the amount of time he spent in the special housing unit and the lack of access to someone "versed in law to advise" him. Id. at 8.

There is no question under the first Turner step that Baptiste failed exhaust his administrative remedies regarding his second and third grounds. Baptiste did not raise these

---

[4] Baptiste exhausted his administrative remedies as to the first ground by filing a BP-10 and a BP-11. Doc. 1 at 2–3. Respondent agrees. Doc. 8 at 2.

7

issues at both levels of appeal and admits he did not do so,[5] but, instead, argues the Court should excuse his failure due to the amount of time he spent in the special housing unit.  Id.  Baptiste's attempt to excuse his lack of exhaustion as to these two grounds fails.  The exhaustion of available administrative remedies is a prerequisite to suit, Ross, 136 S. Ct. at 1856, and Baptiste has not shown any administrative remedies were unavailable to him.  And if the Court were to construe Baptiste's explanation as providing special circumstances excusing exhaustion, this Court would run afoul of precedent.  Id. at 1858 (rejecting the "special circumstances" exception to the congressionally-mandated exhaustion requirement).  Thus, Baptiste did not exhaust his available administrative remedies as to his claims he could not call witnesses during his DHO hearing and the delay in receiving the DHO report hindered his ability to gather witness statements and legal counsel on appeal.

Because it is clear under the first Turner step Baptiste did not exhaust his administrative remedies as to two of the three grounds raised in his Petition, the Court should **GRANT** this portion of Respondent's Motion to Dismiss.  However, because Baptiste exhausted his administrative remedies regarding his claim that he did not receive a copy of the incident report within 24 hours, the Court now turns to Baptiste's due process claim as to this contention.

## II.   Whether Due Process Requirements Were Met

Baptiste's remaining ground concerns his receipt of an incident report related to the discovery of contraband in December 2016.  Specifically, on December 23, 2016, Baptiste was

---

[5]   Notably, Baptiste did raise an issue relating to the calling of witnesses in his timely BP-10 level administrative remedy request, but did not do so at the BP-11 level.  Compare Doc. 8-1 at 12, with Doc. 8-1 at 15.  Additionally, the basis for the challenge at the BP-10 level—that the delay in the issuance of an incident report—is different from the ground he asserts now—that his transfer and misinformation from prison officials prevented him from calling witnesses at the DHO hearing.  For both reasons, it is clear that Baptiste did not exhaust all available administrative remedies as to this claim that his transfer and misinformation from prison officials prevented him from calling witnesses at the DHO hearing.

in "receiving and discharge" at his former institution so staff could inventory his property before his pending transfer.[6] Doc. 8-2 at 13.  As staff members were opening commissary items, Baptiste asked if he could have two boxes of Zebra Cakes to take back to his unit without these boxes being opened and inspected.  Id. at 15.  An officer ordered Baptiste to allow him to look in the Zebra Cakes boxes, and the officer found in one of the boxes a clear plastic bag "with what appeared to be several small baggies inside the plastic bag." Id. at 13.  The clear plastic bag and its contents were sent to the Arkansas State Crime Laboratory for analysis, which revealed that one bag contained a material that tested positive as cocaine and another bag contained a material that tested positive as heroin.  Id.  Prison staff received the report from the Arkansas State Crime Lab on May 5, 2017.  Id.

On this same date, staff prepared an incident report and charged Baptiste with violation of the BOP's Code 113 based on his possession of narcotics.  Id. at 15.  After the Federal Bureau of Investigation ("FBI") referral was accepted, the incident report was "released for administrative processing" on December 1, 2017, at which time Baptiste was given a copy of the incident report, was advised of his right to remain silent, and stated he had nothing to say.  Id. at 16.  The Unit Disciplinary Committee ("UDC") referred the incident report to the DHO with a recommendation of loss of good-conduct time.  Id. at 15–16.

Baptiste was provided with a Notice of Disciplinary Hearing Before the DHO form on December 5, 2017 and was advised he was entitled to have staff representation at the hearing and that he had the right to call witnesses, provided doing so would not jeopardize institutional safety, and the right to present documentary evidence.  Id. at 17.  Baptiste checked blanks on this

---

[6] The Court has drawn from Respondent's version of events based on his Motion to Dismiss and attachments in recounting the "facts" relevant to the Court's analysis of Baptiste's exhausted due process claim.

form indicating he did not wish to have staff representation and did not wish to have witnesses. Id.  Baptiste also received a copy of an Inmate Rights at Discipline Hearing form on December 5, 2017, and he acknowledged he was advised of his rights to: have a written copy of the charge at least 24 hours prior to the DHO hearing; have a staff representative at the hearing; call witnesses or present written statements from unavailable witnesses; present documentary evidence; make a statement or remain silent; be present during the hearing; be advised of the DHO's decision, the facts supporting that decision, and the DHO's disposition in writing; and appeal the DHO's decision within 20 calendar days of notice of the decision and disposition.  Id. at 18.

DHO Victor Santana conducted the hearing on December 7, 2017.  Id. at 12.  Baptiste waived his right to staff representation and his right to call witnesses.  Id.  In addition to the incident report and investigation, DHO Santana considered memoranda from Officers J. Lloyd (the reporting officer) and M. Eaves, the chain of custody log, the report from the Arkansas State Crime Lab, photographs, the FBI referral, and a memorandum from Unit Manager T. Howell. Id.  DHO Santana found Baptiste committed the charged act and sanctioned Baptiste with 15 days' disciplinary segregation, loss of visitation privileges for 180 days, and the disallowance of 41 days' good-conduct time.  Id. at 12–14.  Baptiste was provided with a written copy of the DHO's findings and advised of his appeal rights.  Id. at 14.

To determine whether Baptiste's right to due process was violated, the Court must determine what process was owed to Baptiste.  A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are taken away or denied. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S.

10

539, 555–57 (1974)).  That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact.  Id. (citing Wolff, 418 U.S. at 563–67).  Additionally, the Eleventh Circuit has determined an inmate has the right to attend his disciplinary hearing.  Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992).  Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants.  Id.

As laid out above and in the attachments to the parties' pleadings, the record clearly reflects that Baptiste received the required due process protections.  Officer J. Lloyd issued an incident report on May 5, 2017, and Baptiste was given a copy of the incident report the same date.  Doc. 8-2 at 15.  Officer F. Vandiver found Baptiste in possession of narcotics on December 1, 2017, R. Sumner referred the matter to the DHO on December 5, 2017, and Baptiste received a copy of the notice of hearing and his rights on December 5, 2017.  Id. at 15–16.  The allegations of Baptiste's incident report were investigated, and he received a DHO hearing on December 7, 2017.  Id. at 17–18.  Baptiste does not dispute he received advance written notice of the charges and the hearing by virtue of his receipt of the incident report nearly seven months before the hearing.  Docs. 1, 11.  Moreover, Baptiste was advised at least 24 hours in advance of the hearing of his rights to be present at the hearing, to testify, to call witnesses, and to present evidence.  Doc. 8-2 at 17–18.

Baptiste attended the hearing, and his rights were again read and reviewed with him.  Baptiste declined to have a staff representative and did not wish to present evidence or witnesses.  Following the hearing, DHO Santana detailed his factual and legal conclusions, and Baptiste was provided with the DHO's written report.  Id. at 12–14.  Thus, the well-documented evidence

unequivocally demonstrates Baptiste received advance written notice of the charges against him, attended the hearing, was given the opportunity to call witnesses and present documentary evidence, and received a written statement setting forth the DHO's findings of fact.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. Appx' 752, 757 (11th Cir. 2006) (internal citation omitted).

Baptiste attempts to avoid the "some evidence" supporting his committing the charged act by arguing that his rights to due process were violated because he did not receive a copy of the incident report within 24 hours of the staff becoming aware of the incident, which Baptiste maintains is a violation of BOP policy. Doc. 1 at 6–7.

According to the Inmate Discipline Program regulations, the "discipline process starts when staff witness or reasonably believe" an inmate committed a prohibited act, and an inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." § 542.5(a); Doc. 8-3 at 17. Here, although the charged incident

occurred on December 23, 2016, Respondent maintains staff did not "become aware" of Baptiste's involvement in the charged incident until May 5, 2017 after staff received the May 5, 2017 report from the Arkansas State Crime Laboratory confirming that the bags found in one of the Zebra Cakes boxes contained narcotics. However, the Court is skeptical that staff did not become aware of Baptiste's involvement with the narcotics found in the Zebra Cakes box until May 5, 2017. Instead, it seems more plausible that staff became aware of Baptiste's involvement with these narcotics on December 23, 2016, when the staff discovered the suspicious baggies, and the staff's awareness was merely confirmed by the May 5, 2017 report from the crime lab. Thus, Baptiste's assertion that he should have received a copy of the incident report, per policy, within 24 hours of the incident's occurrence is not implausible.

Nevertheless, even accepting Baptiste's assertion as true, he does not set forth a viable due process violation. Instead, the most Baptiste shows is perhaps staff violated BOP policy, but a violation of policy is not a constitutional violation. See Wallace v. Fed. Det. Ctr., 528 F. App'x 160, 162–63 (3d Cir. 2013) (noting that, even if § 541.5(a) was violated when petitioner received a copy of the charges two months after the incident, there was no due process violation under Wolff and the delay did not prejudice petitioner); Abbadessa v. Haynes, Civil Action No. CV211-084, 2011 WL 6004330, at *3 (S.D. Ga. July 15, 2011) (Even if petitioner could show non-receipt of incident report within 24 hours, "this would show only a failure to comply with the ideal det forth in a BOP policy. It would not demonstrate a violation of a constitutional right."); see also Burgess v. Taylor, 647 F. App'x 952, 953 (11th Cir. 2016) (upholding district court's finding of no clear error in finding petitioner received all due process protections when he received written notice of charges at least 24 hours before DHO hearing); Jones v. Corizon, No. 2:12-cv-786, 2015 WL 5013954, at *18 (M.D. Ala. Aug. 18, 2015) (stating the

circumvention of departmental regulations or policies does not assert a violation of an inmate's constitutional rights (citing Sandin v. Conner, 515 U.S. 472 (1995), and Harris v. Birmingham Bd. of Educ., 817 F.2d 1525 (11th Cir. 1987))).

Baptiste received all of the due process protections afforded him during the disciplinary proceedings, and any contention to the contrary is without merit. Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** Baptiste's Petition.

### III.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Baptiste leave to appeal *in forma pauperis*. Though Baptiste has, of course, not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Baptiste's Petition, Respondent's Motion to Dismiss, and the responsive pleading, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Baptiste *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Baptiste's Petition.  I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case and **DENY** Baptiste leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Baptiste and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of May, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA